```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
```

CAREMEX S.A. DE C.V.,

                            Plaintiff,

          -against-

JAYDEN STAR LLC,

                            Defendant.

```
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___ 4/7/2025

23-CV-11051 (SN)

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

      Caremex S.A. de C.V. ("Caremex") sued Jayden Star LLC ("Jayden Star") for breach of contract and account stated. Jayden Star responded by filing an answer and five counterclaims under New York law for: (1) conversion; (2) trade secret misappropriation; (3) unfair competition; (4) breach of contract; and (5) unjust enrichment. Caremex moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Caremex's motion for judgment on the pleadings is GRANTED as to the counterclaims for conversion, unfair competition, and breach of contract; and DENIED as to the counterclaims for trade secret misappropriation and unjust enrichment.

## FACTUAL AND PROCEDURAL BACKGROUND

      Caremex is a Mexican jewelry manufacturer that sells jewelry in Mexico and exports to the United States. Compl., ECF No. 1. Jayden Star is a New York City jewelry wholesaler. On December 20, 2023, Caremex brought this action against Jayden Star to recover $347,131.75 in owed payments, asserting claims of breach of contract and account stated. Id. Jayden Star filed

an answer and asserted five counterclaims. Answer & Counterclaims, ECF No. 24 (hereinafter, "Counterclaims").

As alleged in Jayden Star's Counterclaims, in late 2019, Jayden Star contacted Caremex to manufacture certain light-weight silver jewelry to be distributed by Jayden Star, and in early January 2020, Jayden Star placed its first order for production of jewelry. Counterclaims ¶¶ 3, 7. As the relationship between the two parties progressed, Caremex advised that it was not ready to enter into an equity agreement but requested a "simple" Distribution Agreement that would respect each party's current customers in the market. Id. ¶ 11. On September 21, 2020, and again on October 1, 2020, Jayden Star sent Caremex a signed Non-Compete Non-Disclosure Agreement ("NCNDA"). Id. ¶ 12-13. The NCNDA provided that Caremex would not contact Jayden Star's customers or sell products directly with or through a third-party to Jayden Star's customers. Id. ¶ 14. Jayden Star claims that there were "multiple attempts to formalize a contract" with Caremex to produce jewelry. Id. ¶ 15.

Jayden Star shared with Caremex the name of its major customer, IBB, which it alleges is "secret," was "disclosed in trust," and could "give an advantage over competitors to Caremex." Id. ¶¶ 16, 18. Jayden Star further alleges that Caremex "breached their agreement" by contacting IBB directly to sell items without Jayden Star. Id. ¶ 17. As a result, IBB cancelled multiple orders with Jayden Star, causing Jayden Star to lose revenue. Id. ¶ 19.

## DISCUSSION

I. **Federal Rule of Civil Procedure 12(c)**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed-but early enough not to delay trial." Fed. R. Civ. P. 12(c). In considering a Rule 12(c) motion for judgment on the pleadings, the court applies the same standards used to decide a Rule 12(b)(6)

motion to dismiss. See LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475–76 (2d Cir. 2009).

A Rule 12(c) motion should be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." Dargahi v. Honda Lease Trust, 370 F. App'x 172, 174 (2d Cir. 2010) (quoting Burns Int'l Sec. Servs., Inc. v. Int'l Union, 47 F.3d 14, 16 (2d Cir. 1995)). Under that standard, the Court must take "factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). The Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted). The Court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

## II.  Duty to the Court

Local Civil Rule 7.1(a) provides that a party opposing a motion "must" submit a memorandum of law "dividing, under appropriate headings, into as many parts as there are issues to be determined." Rather than follow the Local Civil Rules of this Court, Jayden Star "elected" not to comply. Instead, "to conserve its resources," it filed a short letter that did not cite to a single allegation or offer a single case defending the legal sufficiency of its claims. ECF No. 42.

Jayden Star's decision negatively impacts the judicial process, which benefits from the adversary system. While Jayden Star's resources may have been saved, the Court's were not. To reach what it believes is the correct decision, the Court and chambers staff spent additional time researching legal questions and attempting to divine what Jayden Star's counterclaims mean. Jayden Star's bald statements that "the complaint sets forth sufficient facts," or that it has "sufficiently pled each cause of action," does not make it so.

The Court would be well within its discretion to deem Jayden Star to have abandoned its counterclaims.[1] Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008) (courts "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed") (internal citations omitted); Jackson v. Fed. Express, 766 F.3d 189, 198 (2d Cir. 2014) ("a court may . . . infer . . . that relevant claims or defenses that are not defended have been abandoned"). The Court, however, declines to do so because the interests of justice are best served by addressing matters on the merits.

### III.     Counterclaim One: Conversion

Jayden Star alleges that Caremex, "to their own benefit, converted and exerted control over [Jayden Star's] physical, electronic, tangible, and intangible property and information without authorization or consent," and "as a direct and proximate result of [Caremex's] conversion and misuse of Jayden's property and information, [Jayden Star] has incurred substantial damages." Counterclaims ¶¶ 22-23.

---

[1] Indeed, Jayden Star did not file *any* opposition to the motion. When the deadline to do so passed, the Court *sua sponte* granted Jayden Star an extension, at which time it filed its one-page letter. ECF Nos. 41, 42.

**A. Legal Standard**

Under New York law, conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006) (citing Vigilant Ins. Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 44 (1995)) (internal quotation marks omitted). To state a claim of conversion, a plaintiff must allege: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." Moses v. Martin, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (internal quotation marks omitted).

Though claims of conversion typically require an identifiable tangible item, intangible property may, under certain circumstances, also be subject to conversion. This is, in part, because New York courts apply the "merger" doctrine to allow intangible property to merge with a tangible object for conversion purposes. Thus, courts have allowed conversion claims brought over stock shares (that merge with stock certificates) and musical performances (that merge with master recordings). Agar v. Orda, 264 N.Y. 248, 251 (1934) (stock shares); Sporn v. MCA Records, 58 N.Y.2d 482, 489 (1983) (musical performance). More recently, the New York State Court of Appeals held that electronic records of customer contacts and related data are subject to a conversion claim, without making a corresponding finding that such electronic records "merged" with a tangible thing. See Thyroff v. Nationwide Mut. Ins. Co., 8 N.Y.3d 283 (2007). Finally, the Restatement (Second) of Torts notes that "the prevailing view [is] that there can be no conversion . . . of such intangible rights as the goodwill of a business or the names of customers." Restatement (Second) of Torts § 242 (1965).

Conversion is also "concerned with possession, not with title." Pierpoint v. Hoyt, 260 N.Y. 26, 29 (1932). Thus, "a defendant who, though having custody of goods, does not exclude the owner from the exercise of his rights is not liable for conversion." State of New York v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 259 (2002). Accordingly, courts have dismissed conversion claims where the defendant merely copied information or files but did not exclude the plaintiff from such access. For example, in Fischkoff v. Iovance Biotherapeutics, Inc., the court held that the plaintiff could not state a claim for conversion where the defendant sent copies of confidential company documents to himself because there was no allegation that the plaintiff was also excluded from using the original files. 339 F. Supp. 3d 408, 414 (S.D.N.Y. 2018). Similarly, in Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, the court found that a defendant who downloaded business documents onto a thumb drive was not liable for conversion because defendant "possessed only a copy of the client list and did not, in any way, limit or otherwise deprive [plaintiff] of possession or use of that list." 813 F. Supp. 2d 489, 536 (S.D.N.Y. 2011). Numerous other cases have found that a claim of conversion does not lie for mere copying. See, e.g., Sell It Soc., LLC v. Strauss, 15-cv-970 (PKC), 2018 WL 2357261, at *8 (S.D.N.Y. Mar. 8, 2018) ("Because a conversion claim is dependent on the unauthorized possession of the property at issue interfering with the rightful owner's right of possession, courts in this Circuit have routinely rejected conversion claims predicated on a defendant's possession of an electronic copy of the property.") (citing cases).

**B. Analysis**

Jayden Star pleads that it "provided information that is secret and could give advantage over competitors to Caremex, that being the name of a major customer, IBB." Counterclaims ¶ 16. The Court, thus, interprets the identity of IBB as the property that Jayden Star alleges Caremex to have unauthorized exercise over. Assuming without finding that a customer's name

could constitute an intangible property right subject to a conversion claim, Jayden Star has not pleaded that Caremex excluded Jayden Star from the use of the customer's name in any way. At best, Jayden Star is alleging that Caremex "copied" that information, which is insufficient to state a claim for conversion.

Accordingly, Jayden Star fails to plead a counterclaim for conversion under New York law.

## IV. Counterclaim Two: Trade Secret Misappropriation

Jayden Star alleges that it "exercised reasonable efforts to maintain the confidentiality and secrecy of its Client Information which it possessed, which constitute 'trade' secrets under New York law," and that the "Client Information is proprietary and confidential." Counterclaims ¶¶ 27-28. Jayden Star also alleges that Caremex "directly or through the actions of others, willfully and maliciously misappropriated [Jayden Star's] trade secrets in violation of New York common law or other applicable law." Id. ¶ 31. Accordingly, Caremex was "unjustly enriched as a result of [Caremex's] misappropriation of [Jayden Star's] protected trade secrets." Id. ¶ 34.

### A. Legal Standard

Under New York law, to state a claim of trade secret misappropriation, a plaintiff must claim: (1) they "possessed a trade secret," and (2) the defendant "used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43-44 (2d Cir. 1999). "Improper means include fraudulent misrepresentations to induce disclosure, tapping of telephone wires, eavesdropping or other espionage . . . In general they are means which fall below the generally accepted standards of commercial morality and reasonable conduct." Pauwels v. Deloitte LLP, 83 F.4th 171, 184 (2d Cir. 2023) (internal quotation marks omitted).

A trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it." Softel, Inc. v. Dragon Med. & Sci. Commc'n, Inc., 118 F.3d 955, 968 (2d Cir. 1997) (quoting Restatement of Torts § 757 cmt. b). New York courts have considered the following factors to determine whether information constitutes a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395, 407 (1993) (quoting Restatement of Torts § 757 cmt. b) (internal quotation marks and brackets omitted). "While neither the New York Court of Appeals nor the United States Court of Appeals for the Second Circuit has expressly required trade secrets to be identified with any particular degree of specificity, it is evident that a 'vague and indefinite' piece of information cannot be protected as a trade secret." Broker Genius, Inc. v. Zalta, 280 F. Supp. 3d 495, 515 (S.D.N.Y. 2017) (quoting Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co., 1 F. Supp. 3d 224, 258 (S.D.N.Y. 2014)). Courts in this District will, however, allow trade secret claims that are broad so long as they provide sufficient detail so that the defendant can identify the trade secret at issue. See Pauwels v. Deloitte LLP, No. 19-cv-2313 (RA), 2020 WL 818742, at *4 (S.D.N.Y. Feb. 19, 2020) (finding that the plaintiff had sufficiently pleaded the existence of a trade secret by describing an analytic model in general terms, including that it consisted of a "proprietary set of formulas . . . incorporat[ing] [the plaintiff's] unique insight into the alternative energy market" and served as a "valuation tool"); Broker Genius, 280 F. Supp. 3d at 515 (finding "software architecture," "UX/UI," and

8

"specific solutions to address[] scalability problems in an automatic ticket pricing software" sufficiently pleaded as a trade secret "in a manner that enables the defendant [to] defend himself and to divine the line between secret and nonsecret information").

Courts have found that a plaintiff states a claim for misappropriation of a trade secret where the complaint "identified the trade secrets at issue with sufficient specificity that it is certainly plausible that the information identified was, in fact, secret." Cont'l Indus. Grp., Inc. v. Altunkilic, 788 F. App'x 37, 41 (2d Cir. 2019) (reversing district court and finding that the plaintiff's misappropriation of trade secret claim was "not so 'threadbare'" that the facts "'nudge'" the claim "'across the line from conceivable to plausible'") (quoting Ashcroft, 556 U.S. at 678, 680); see also Tesla Wall Sys. v. Related Cos., L.P., No. 17-cv-5966 (JSR), 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 15, 2017) (finding complaint was sufficient as it alleged specific categories of trade secrets that were misappropriated).

Generally, customer lists are protectible as trade secrets when "developed by a business through substantial effort and kept in confidence . . . and protected at the owner's instance against disclosure to a competitor, provided the information it contains is not otherwise readily ascertainable." Defiance Button Mach. Co. v. C & C Metal Prods. Corp., 759 F.2d 1053, 1063 (2d Cir. 1985); see also N. Atl. Instruments, Inc., 188 F.3d at 46 (collecting cases). "The question of whether or not a customer list is a trade secret is generally a question of fact." A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 89 (2d Cir. 1991); see also Cardiocall, Inc. v. Serling, 492 F. Supp. 2d 139, 148 (E.D.N.Y. 2007) ("Customer lists may constitute trade secrets under certain limited circumstances. Specifically, the identity of customers is protected if the list was developed through substantial effort and kept in confidence."); Friedman v. Wahrsager, 848 F. Supp. 2d 278, 302 (E.D.N.Y. 2012) ("[T]he customer list, including the rates charged to and

9

correspondence with those customers, are trade secrets."); Gen. Sec., Inc. v. Com. Fire & Sec., Inc., 17-cv-1194 (DRH)(AYS), 2018 WL 3118274, at *5 (E.D.N.Y. June 25, 2018) (complaint sufficiently pleaded a claim for misappropriation of trade secrets, including customer lists, because the plaintiff described the trade secrets with sufficient specificity, including identification of the individual customers contacted by defendant, and "described the specific steps it took to keep the customer information secret").

In addition to alleging the existence of a trade secret, a plaintiff must also allege that a defendant "used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." N. Atl. Instruments, Inc., 188 F.3d at 43-44. At the pleading stage, it is sufficient for a plaintiff to plausibly allege that the defendant misappropriated the information that was intended to be kept secret. See Iacovacci v. Brevet Holdings, LLC, 437 F. Supp. 3d 367, 381 (S.D.N.Y. 2020) (allegations that counterclaim defendant attempted to execute business transactions using counterclaim plaintiff's trade secrets adequately alleges misappropriation); Medtech Prod. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 788-90 (S.D.N.Y. 2008) (applying New York law) (citing the plausibility standard and denying motion to dismiss when defendant was able to create a competing product on an "expedited basis" despite having no experience in the dental protector market); Balance Point Divorce Funding, LLC v. Scrantom, 978 F. Supp. 2d 341, 353 (S.D.N.Y. 2013) (concluding plaintiff sufficiently raised an inference that defendant used its trade secret where defendant was positioned to benefit from use of the trade secret because "knowledge of the [trade secret] would enable [defendant] inevitably to better compete with [plaintiff]").

### B. Analysis

Jayden Star alleges that its "Client Information" is "proprietary and confidential, and trade secrets." Counterclaims ¶ 28. It also alleges that it provided Caremex a signed NCNDA "in

10

anticipation of providing certain privileged information regarding their own customers' information for branding purposes." Id. at ¶ 12. Later, Jayden Star alleges that it "provided information that is secret . . . that being the name of a major customer, IBB," and that "the identity of IBB had been disclosed in trust." Id. at ¶¶ 16, 18. At this stage, Jayden Star sufficiently pleads that the identity of IBB is a trade secret, which was provided to Caremex in confidence.

Jayden Star has also sufficiently pleaded that Caremex used that trade secret in breach of a confidential relationship, as identified by the NCNDA. The purpose of the NCNDA was to protect Jayden Star from the risk of Caremex contacting Jayden Star's customer directly or trying to sell products directly or through a third-party to Jayden Star's customers. Counterclaims ¶ 14. Jayden Star further alleges that, despite the intended confidentiality, Caremex contacted IBB "in order to sell items and create a business partnership without Jayden," and that as a result, "IBB cancelled multiple orders with Jayden." Id. at ¶¶ 17, 19.

Thus, at the motion to dismiss stage, Jayden Star has sufficiently pleaded a counterclaim for trade secret misappropriation under New York law.

V.   **Counterclaim Three: Unfair Competition**

Jayden Star alleges that "[Caremex] unlawfully misappropriated [Jayden Star's] property rights to obtain an unfair competitive advantage over [Jayden Star] in the marketplace" and as a result, Jayden Star sustained "substantial damages." Counterclaims ¶¶ 38-40.

"'A claim for unfair competition based on the same allegations as a claim for misappropriation of trade secrets is treated as a single cause of action,' and should be dismissed as duplicative." M&A Metals, Inc. v. Fina, No. 21-cv-5570 (PKC)(PK), 2023 WL 2734794, at *7 n.11 (E.D.N.Y. Mar. 31, 2023) (quoting Uni-Sys., LLC v. United States Tennis Ass'n, Inc., 350 F. Supp. 3d 143, 179 (E.D.N.Y. 2018)); see also Turret Labs USA, Inc. v. CargoSprint,

LLC, No. 19-cv-06793 (EK)(RML), 2021 WL 535217, at *6 (E.D.N.Y. Feb. 12, 2021) ("Where, as here, a plaintiff's unfair competition claim is premised on the same allegations as the misappropriation claim, it must be dismissed as duplicative."), aff'd, No. 21-952, 2022 WL 701161 (2d Cir. Mar. 9, 2022) (citations omitted).

Jayden Star's claim for unfair competition relies on the same allegations as those pleaded for its claim of trade secret misappropriation. Accordingly, Jayden Star's claim for unfair competition is dismissed as duplicative.

## VI. Counterclaim Four: Breach of Contract

Jayden Star alleges that Caremex "owed certain duties to [Jayden Star] including a duty of loyalty and honesty, and a duty to not act in any way contrary to the interests of [Jayden Star] and that the parties maintained an "Agreement," which Caremex was bound by. Counterclaims ¶¶ 45-47. The "Agreement" included certain fiduciary duties: "(a) not to compete with [Jayden Star]; (b) not to usurp corporate opportunities or divert business on behalf of another; (c) not to solicit [Jayden Star's] clients on behalf of another; (d) not to misuse or misappropriate [Jayden Star's] confidential or trade secret information; and (e) not to be deceitful to [Jayden Star]." Id. ¶ 48. Jayden Star alleges that Caremex breached this "Agreement," resulting in "loss of business expectancies, . . . clients, . . . goodwill." Id. ¶ 50.

### A. Legal Standard

Under New York law, to state a claim for breach of contract, a plaintiff must plead "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." Thales Alenia Space France v. Thermo Funding Co., LLC, 959 F. Supp. 2d 459, 464 (S.D.N.Y. 2013) (quoting Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011)).

A complaint "fails to sufficiently plead the existence of a contract" if it does not provide "factual allegations regarding, *inter alia,* the formation of the contract, the date it took place, and the contract's major terms." Valley Lane Indus. Co. v. Victoria's Secret Direct Brand, 455 F. App'x 102, 104 (2d Cir. 2012); see also Berman v. Sugo LLC, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (finding that an agreement did not exist when "[c]ounterclaims do not set forth a single fact relating to the formation of the contract, the date it took place, the contract's major terms, the parties to the contract, or [Defendant's] assent to its terms").

### B. Analysis

The existence of a contract is fundamental to a breach of contract claim. Jayden Star fails to plead sufficient facts to establish an agreement with Caremex. The two contracts identified by Jayden Star are an alleged Distribution Agreement and NCNDA. Counterclaims ¶¶ 11, 12. Jayden Star pleads that Caremex requested a Distribution Agreement, and that Jayden Star shared a signed NCNDA with Caremex on two occasions. Id. ¶¶ 11-13. Significantly, however, Jayden Star does not allege that Caremex executed the Distribution Agreement or NCNDA.[2] Jayden Star also has not sufficiently pleaded facts related to the formation of the agreements, such as the date the agreements allegedly took place or Caremex's assent to the terms of the Distribution Agreement or NCNDA. Without an actual enforceable contract, Jayden Star cannot allege that a breach occurred. Accordingly, Jayden Star fails to sufficiently plead a counterclaim for breach of contract under New York law.

---

[2] Caremex confirms that it requested a Distribution Agreement and was sent an NCNDA twice by Jayden Star, but neither was executed or finalized. Pl.'s Mem. of Law in Supp. of 12(c) Mot., ECF No. 40, at 8; Reply to Opp'n, ECF No. 43, at 7.

## VII.   Counterclaim Five: Unjust Enrichment

Jayden Star alleges that Caremex "has been unjustly enriched at the expense and to the detriment of [Jayden Star] by directly conducting business with [Jayden Star's] major customer." Counterclaims ¶ 53.

### A.   Legal Standard

Under New York law, to state a claim for unjust enrichment, a plaintiff must plead "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff." Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (internal citation omitted) (alteration omitted). "Unjust enrichment claims are available 'only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff,' such as when 'the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled.'" In re Columbia Tuition Refund Action, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021) (quoting Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777 (2012)). Where there is an existing contract, a plaintiff cannot bring an unjust enrichment claim because it is duplicative of a claim for breach of contract. See Nat'l Westminster Bank PLC v. Ret. Care Assocs., Inc., No. 98-cv-6023 (JSM), 1999 WL 239677, at *4 (S.D.N.Y. Apr. 23, 1999) ("Where there is an enforceable written contract governing the particular subject matter, the claims based on quasi-contract theories, such as unjust enrichment . . ., can be dismissed because they are duplicative of the breach of contract claim."). If, however, there is a "bona fide dispute as to whether a relevant contract exists or covers the disputed issue," the unjust enrichment may be pleaded in the alternative. Downey v. Adloox Inc., 238 F. Supp. 3d 514, 526 (S.D.N.Y. 2017).

### B. Analysis

Jayden Star has not sufficiently pleaded the existence of a contract for a breach of contract claim and can proceed with pleading a counterclaim for unjust enrichment. To state a claim for unjust enrichment, Jayden Star must assert that it bestowed a benefit on Caremex and that it was not adequately compensated for that benefit. Jayden Star has sufficiently pleaded that it provided secret information, namely IBB's identity, to Caremex and that Caremex benefited from that information. As a result of being provided, in confidence, IBB's name, Caremex "contact[ed] IBB directly in order to sell items" and "create[d] a business partnership without Jayden," which led to "extensive damages in lost revenue" and multiple cancelled orders with IBB. Counterclaims ¶¶ 17, 19. This is sufficient to plead a claim of unjust enrichment. See LivePerson, Inc. v. 24/7 Customer, Inc., 83 F. Supp. 3d 501, 519 (S.D.N.Y. 2015) (finding a claim for unjust enrichment sufficiently pleaded where complaint alleges that defendant "improperly obtained [p]laintiff's intellectual property and confidential information and used them to develop a competing product" and "that [d]efendant's conduct caused [p]laintiff's clients to terminate their dealings with [p]laintiff in favor of [d]efendant"). Accordingly, Jayden Star sufficiently pleaded a counterclaim for unjust enrichment under New York law.

### VIII. Attorney's Fees And Costs

Caremex requests that the Court award the costs associated with its motion for judgment on the pleadings. New York follows the "American Rule," which provides that "the prevailing party may not collect [attorney's fees] from the loser unless an award is authorized by agreement between the parties or by statute or court rule." A.G. Ship Maint. Corp. v. Lezak, 69 N.Y.2d 1, 5 (1986). Caremex identifies no basis to be awarded its fees for having prevailed, in part, on its motion.

## CONCLUSION

Caremex's motion for judgment on the pleadings pursuant to Rule 12(c) is GRANTED in part and DENIED in part. Jayden Star's counterclaims for conversion, unfair competition, and breach of contract are DISMISSED with prejudice. All other requests for relief are denied. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 38.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   April 7, 2025
         New York, New York